[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The defendant in this case has filed a motion to dismiss and a motion to suppress. The basis for these motions is the failure of the state police to comply with the defendant's subpoena for tape recordings of the 911 telephone call to the police and radio transmissions between police officers relating to the stop and subsequent arrest of the defendant. The defendant maintains that this "failure to provide [the recordings] to defense counsel should result in dismissal." (Transcript, 12/14/2001 motion hearing, at 14.) CT Page 2414
In this case, recordings of telephone conversations or radio conversations were not preserved. Our courts have had several occasions to consider the proper disposition of a case in which the defense subpoenas these items, only to find they were not preserved. The state claims that where tapes or recordings are not intentionally erased, our courts have concluded that the failure to preserve the tapes did not constitute sufficient grounds for dismissal of the charges.
In State v. Asherman, 193 Conn. 695, 478 A.2d 227 (1984), cert. denied, 470 u.s. 1050, 105 S.Ct. 1749, 84 L.Ed.2d 814 (1985), our Supreme Court considered a situation where a minuscule amount of blood evidence found was completely consumed in the testing performed by the state, thereby rendering it impossible for the defendant to conduct independent tests of the sample. The defendant had filed, and the trial court had denied, a motion to strike the results of the tests that the state performed. In its opinion, our Supreme Court set forth the following balancing test to be applied to missing evidence situations: "Whether the defendant, under the facts of the present case, has been deprived of his right depends upon the materiality of the missing evidence, the likelihood of mistaken interpretation of it by witnesses or the jury, the reason for its nonavailability to the defense and the prejudice to the defendant cause by the unavailability of the evidence." Id., 246.
Applying this balancing test to the present case, the defendant must show how the contents of the 911 telephone call or the conversations between police officers following it pertain to whether the defendant did or did not possess marijuana on his person, the sole offense with which he is presently charged. The defendant also must show prejudice resulting from the failure of the state police to produce the tapes. The reason for nonavailability is purely innocuous — the state police equipment at Troop D in Danielson simply was old equipment, needing replacement, for which spare parts were not available in case of a part breaking. The state maintains that the failure of the state to produce the tape should not be viewed as depriving the defendant of his right to due process.
In State v. Sims, 12 Conn. App. 239, 530 A.2d 1069, cert. denied,206 Conn. 801, 535 A.2d 1315 (1987), our Supreme Court addressed a situation remarkably similar to that presented here: where the defendant sought police broadcast tapes connected with the defendant's arrest, which turned out to be unavailable, and the defendant thereafter sought to preclude the police officers from testifying about the arrest. The court noted that "[s]ince access to the statements of witnesses for the prosecuting authority is not a constitutional right, . . . the burden of showing prejudice rests on the defense." (Citations omitted; internal quotation marks omitted.) Id., 248. The court went on to note that CT Page 2415 "[w]hether or not sanctions for nondisclosure should be imposed depends upon the extent of the state's culpability in failing to make disclosable material available to the defense, when weighed against the amount of prejudice to the defense which resulted from the nondisclosure." (Internal quotation marks omitted.) Id., 249.
The court also noted that "[t]he foreseeability that production of individual witness statements would be required in the event of trial is far greater than in the case of a twenty-four hour police broadcast tape. The foreseeability of a need for the missing tape in the event of a trial is a factor in determining the state's culpability in failing to comply with the disclosure provisions of the Practice Book." Id., 249 n. 6. The court concluded, "[a]though the erasure in this case demonstrates that the police policy in this regard is far from perfect, it does negate an inference of bad faith." Id., 249.
In this case, one of the recordings that the defendant sought to obtain, and which was not properly recorded, was a recording of a 911 telephone call by an employee of Chucky's convenience store to the police, which is the action that started the chain of events culminating in the defendant's arrest. The discoverability of such tape recordings was considered by our Supreme Court in State v. Cain, 223 Conn. 731,613 A.2d 804 (1992). In that case, the court stated that "a tape recording of a 911 emergency telephone call is not a `statement' within the meaning of . . . Practice Book § [40-15 (2)] . . . and that, therefore, the state was not required by the provisions of the Practice Book to preserve and produce the tape recording in question." Section 40-15 is me precise section of the Practice Book on which the defendant relies in his motion as the basis for dismissing the charges against him because of the inability to produce the tape of that 911 telephone call.
Subsequently, in State v. Wityak, 226 Conn. 470, 627 A.2d 1341 (1993), the court addressed the analogous issue with respect to tapes of police radio broadcasts and concluded that "the same rationale relating to tapes of 911 emergency telephone calls applies to the recordings of [police radio] broadcasts." Id., 474.
The Appellate Court once again addressed the issue in State v.Johnson, 67 Conn. App. 299, ___ A.2d ___ (2001) (Law Journal of Dec. 18, 2001). In that case, one of the issues raised by the defendant was "that the court violated his state constitutional right to due process by denying his motion to dismiss the charges . . . or to exclude certain police testimony because the police destroyed recorded police radio broadcasts made on the night of his arrest." ID., 308. The court summarized the issue as follows: "The defendant argues that the state had a duty to preserve the auidiotape of the . . . broadcasts and that its CT Page 2416 failure to do so violated the defendant's right to due process. The state responds that it had no such duty and, even if it did, the failure to preserve the tape did not violate the defendant's due process rights under [State v. Asherman, 193 Conn. 695, 478 A.2d 227 (1984), cert. denied,470 U.S. 1050, 105 S.Ct. 1749, 84 L.Ed.2d 814 (1985).] We agree with the state that it had no duty to preserve the tape." (Emphasis added.)Johnson, supra, 310.
The court noted that our Supreme Court has "held that in the absence of bad faith on the part of the police department, we have continued to adhere to [a] balancing test. . . . in determining whether a [witness'] testimony should be stricken. . . . Whether or not sanctions for nondisclosure should be imposed depends on the extent of the state's cupability in failing to make disclosable material available to the defense. . . ." Id., 313. In Johnson, the court held that the balance weighed in favor of the state. In that case, the tapes had been intentionally erased pursuant to police policy; whereas, in this case, the tapes were not erased, intentionally or otherwise; rather, the recording mechanism simply failed to make the recording in the first instance. It is indisputable that, viewing various levels of state culpability in failing to make the material available to the defense, the state is less culpable where the recording is never made due to a mechanical malfunction, admittedly of a state-owned recording system, than where the tape is intentionally erased at a date subsequent to its successful recording.
The state Supreme and Appellate Courts have held that tapes of 911 emergency telephone calls made to police offices and tapes of police radio broadcasts are not "statements" as that term is used in the sections of the Practice Book setting forth discovery obligations. Therefore, these tapes are not encompassed within the state's discovery obligations, such that failure to provide them would generate grounds for dismissal of the case. Further, the courts have held that the state has no duty to preserve the tapes in question; finally, in this case there was no question of "preservation," as such, since the tapes were never mace. The purpose of sanction of dismissal is for it to be used as a deterrent to future bad conduct. In this case, the court finds no "bad conduct," by any human actor employed by the state. The "bad conduct" in this case, if it can be called such, is attributable to a mechanical device failing to operate as it is expected to operate.
The defendant's motion to dismiss and motion to suppress is denied.
Kocay, J. CT Page 2417